634 A.2d 726

George **FILOON**

v.

**MIDDLE BUCKS AREA VOCATIONAL–TECHNICAL SCHOOL, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 4, 1993.

Decided Nov. 23, 1993.

John E. Freund, III, for appellant.

Charles L. Herring for appellee.

Before COLINS and PELLEGRINI, JJ., and LORD, Senior Judge.

PELLEGRINI, Judge.

Middle Bucks Area Vocational–Technical School (Middle Bucks) appeals from an order of the Court of Common Pleas

of Bucks County (trial court) reinstating George Filoon (Filoon) to his former position as a full-time professional employee.

Filoon has been employed by Middle Bucks since 1969 as a certified masonry instructor. In 1985, Filoon was also certified as a guidance counselor but never served as such for either Middle Bucks or any other school district. Martha Rechino (Rechino) has been employed as Middle Bucks' certified guidance counselor since 1981.

In April of 1989, Middle Bucks established guidelines providing for a minimum enrollment of 22 students in order to maintain a course full-time, with less enrollment, the course would be offered only half-time. Because of declining enrollment for the 1990–91 school year, Middle Bucks reclassified several full-time courses as half-time, including masonry, and dropped two half-time courses completely.[1]

Middle Bucks notified Filoon that because of the decline in enrollment in masonry classes, he was being demoted to half-time status with the corresponding reduction in pay. Filoon requested a hearing before the Middle Bucks' Executive Council contending that the minimum class size requirement was arbitrary and that Section 1125.1(c)[2] of the School Code, the realignment provision, required he be allowed to "bump" the least senior teacher within any area in which he was certified. Because he was more senior than Rechino and is certified as a guidance counselor, Filoon contended he should be allowed to "bump" into that position.[3] Middle Bucks

1. The reclassification resulted in at least one other full-time instructor being demoted to half-time, and one half-time instructor being suspended.

2. Section 1125.1(c), 24 P.S. § 11–1125.1(c), provides:

   **Persons to be suspended**

   ＊ ＊ ＊ ＊ ＊ ＊

   (c) A school entity shall realign its professional staff so as to insure that more senior employees are provided with the opportunity to fill positions for which they are certificated and which are being filled by less senior employes.

3. According to Filoon, Middle Bucks could have reassigned him full-time as guidance counselor, suspending Rechino and retaining a half-

contended that its action was not a realignment, but was a demotion in accordance with Section 1151 of the School Code.[4]

The Middle Bucks' Executive Council affirmed the demotion finding it was not arbitrary or founded on improper considerations. Filoon took two appeals. He filed an appeal to the Secretary of Education pursuant to Section 1151 challenging his demotion, as well as a petition for review with the trial court contending that his demotion constituted a realignment within the meaning of Section 1125.1(c).[5]

Before the Secretary, Filoon contended that his demotion was improper because the minimum enrollment requirement was arbitrary and his demotion was an improper realignment. The Secretary affirmed that the demotion was for a proper reason, but declined to address the realignment issue because Section 1125.1(f) of the School Code, 24 P.S. § 11–1125.1(f), provides that decisions undertaken pursuant to this section are adjudications within the meaning of the Local Agency Law, 2 Pa.C.S. §§ 551–751, and subject to the jurisdiction of the courts of common pleas. No appeal was taken from the Secretary's finding that the reason for the demotion, less than minimum course enrollment, was valid.

time masonry instructor, or it could have retained him half-time as masonry instructor and split the guidance counselor position between himself and Rechino.

4. Section 1151 of the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. § 11–1151, provides:

**Salary increases; demotions**
The salary of any ... professional employe in any school district may be increased at any time during the term for which such person is employed, ... but there shall be no demotion of any professional employe either in salary or in any type of position, except as otherwise provided in this act, without the consent of the employe, or, if such consent is not received, then such demotion shall be subject to a hearing before the board of school directors and an appeal in the same manner as hereinbefore provided in the case of the dismissal of a professional employe.

5. The Secretary of Education has jurisdiction over appeals from demotions carried out pursuant to Section 1151, while the courts of common pleas have jurisdiction over appeals from suspensions carried out pursuant to Section 1125.1. *Reed v. Juniata–Mifflin Counties Area Vocational–Technical School*, 112 Pa.Commonwealth Ct. 529, 532 n. 2, 535 A.2d 1229, 1231 n. 2 (1988).

■ As to his realignment appeal filed with the trial court, Filoon contended only that his demotion constituted a realignment allowing him to "bump" on a strict seniority basis in other areas in which he was certified. Finding that Middle Bucks' reduction of Filoon's position to half-time was a realignment requiring that strict seniority principles be applied, the trial court ordered Filoon reinstated with backpay and benefits. This appeal followed.[6]

Middle Bucks contends that there was no realignment when Filoon was reduced to half-time status, only a demotion and demotions are not subject to the School Code's seniority principles. It further contends that while only seniority and certification may be considered when a teacher is suspended, educational needs may be considered when there is a demotion. Middle Bucks contends that because of Filoon's lack of experience as a guidance counselor, the best interests of the students necessitated retaining Rechino as such.[7]

The core issue is whether Filoon's reduction to half-time status is a demotion requiring the application of the realignment provision's seniority principles. Moreover, because the sole avenue of appeal for a demotion is to the Secretary, if Filoon's demotion is not the result of a realignment, the trial court is divested of jurisdiction. *Reed v. Juniata–Mifflin Counties Area Vocational–Technical School*, 112 Pa.Commonwealth Ct. at 532 n. 2, 535 A.2d at 1231 n. 2.[8]

6. Our standard of review is to determine whether the employee's constitutional rights have been violated, an error of law has been committed or whether any necessary fact findings are not supported by substantial evidence. *Cadonic v. Northern Area Special Purpose Schools*, 57 Pa.Commonwealth Ct. 42, 426 A.2d 186 (1981).

7. We recognize that a school district's "primary responsibility [is] to maintain 'a thorough and efficient system of public schools.' Pa. Const., Art. III, § 14 (formerly Art. X, § 1). ... The polestar in any decision requiring the assignment of priorities of resources available for education must be the best interest of the student." *School District of Philadelphia v. Twer*, 498 Pa. 429, 435, 447 A.2d 222, 224 (1982) (citations omitted). However, this responsibility must be exercised within the limitations imposed by the General Assembly in the School Code.

8. While neither party raises the issue of the trial court's lack of jurisdiction if Middle Bucks' action is not a demotion due to a realign-

A demotion under the School Code does not involve a separation from service but, rather, is "a reassignment to a position which has less authority, prestige or salary." *Walsh v. Sto–Rox School District,* 110 Pa.Commonwealth Ct. 421, 424, 532 A.2d 547, 548 (1987). A reduction to part-time status also is a demotion. *Reed* at 532, 535 A.2d at 1231. Demotions are presumptively valid and an employee seeking to overturn a demotion has the burden of proving the action was arbitrary, discriminatory or founded on improper considerations. *Id.* at 536, 535 A.2d at 1233. As to what constitutes a suspension, we have held that a suspension is in the nature of an impermanent separation: a furlough or layoff. *Norwin School District v. Choldney,* 37 Pa.Commonwealth Ct. 284, 286, 390 A.2d 328, 330 (1978). Permissible reasons for a suspension are set forth in Section 1124 of the School Code, and when resulting from a realignment, it must be implemented in accordance with that provision's strict seniority principles. With regard to what constitutes a realignment for purposes of the School Code, we have adopted the definition "to reorganize or make new groupings of." *Fry v. Garnet Valley School District,* 86 Pa.Commonwealth Ct. 206, 209, 485 A.2d 508, 510 (1984) (citing Webster's New Collegiate Dictionary 954 (1981)).

Even though he agrees he was demoted and not suspended, Filoon contends that our decision in *Shestack v. General Braddock Area School District,* 63 Pa.Commonwealth Ct. 204, 437 A.2d 1059 (1981), makes the strict seniority principles in the realignment provision of Section 1125.1(c) applicable to demotions. Shestack's demotion was the direct result of a realignment that involved the elimination of existing positions and a reorganization of staff. In essence, what occurred in *Shestack* was a suspension with a simultaneous reassignment to a lesser position. Because there was a "suspension" involved, we held that application of the realignment provision's

ment, the resolution of the core issue necessarily determines that the trial court has jurisdiction. In any event, we may raise jurisdiction *sua sponte. Fried v. Fried,* 509 Pa. 89, 501 A.2d 211 (1985); *Teamsters Local 115 v. Pennsylvania Labor Relations Board,* 152 Pa.Commonwealth Ct. 394, 396 n. 1, 619 A.2d 382, 383 n. 1 (1992).

seniority principles was required.[9]

Filoon asks us to apply *Shestack* to his demotion maintaining the realignment provision was also intended to alleviate the adverse effects of demotions involving a reduction in hours and pay.[10] However, only when the demotion results from a suspension caused by the elimination of a position and the attending reorganization does a "realignment-demotion" addressed in *Shestack* occur. Filoon's demotion was not caused by a realignment; instead, it was caused only by a decline in the number of students enrolled in his class and involved a reduction in his pay and responsibilities only. Here, there is only a "pure demotion."

9. *See also Fry* (the elimination of the full-time elementary principal position and Fry's demotion from principal to classroom teacher and replacement by a part-time principal was a realignment subject to the seniority criteria of the Code); *cf. Ginocchi v. Burrell School District*, 104 Pa.Commonwealth Ct. 617, 622, 522 A.2d 707, 709 (1987) (holding that positions available because of retirement were not realignments requiring application of the seniority principles and did not require granting a promotion).

10. The School contends that in *Gibbons v. New Castle Area School District*, 518 Pa. 443, 543 A.2d 1087 (1988), our Supreme Court restricted *Shestack*, stating that seniority was a mere factor to be considered along with educational needs when implementing demotions. There, a junior high school was closed and a realignment of personnel throughout the district occurred. Gibbons was formerly the junior high school principal and had more seniority than the principal at the senior high school. The school district, however, realigned the staff so that the current senior high principal was retained and Gibbons was reassigned to the position of assistant senior high school principal with no loss of pay. The Supreme Court held that Gibbons' reassignment was in full compliance with Section 1125.1(c) of the School Code, because the seniority criteria did not entitle him to a promotion to senior high school principal. The question addressed by the court was whether a realignment required promoting an employee in order to avoid his suspension or demotion. It did not address *Shestack's* holding that demotions resulting from realignments were subject to the seniority criteria of Section 1125.1(c) of the School Code.

Likewise, we reject Filoon's contention that *Dallap v. Sharon City School District*, 524 Pa. 260, 571 A.2d 368 (1989) and *Duncan v. Rochester Area School Board*, 524 Pa. 254, 571 A.2d 365 (1989), require consideration of only seniority and certification when demoting. Neither case addressed this question with regard to demotions. Instead, *Dallap* and *Duncan* held that before suspending an employee, the school can only take into consideration the employee's multiple certification and seniority ranking.

Because Middle Bucks' action was not a realignment subject to the seniority principles contained in the realignment provisions of Section 1125.1(c), the trial court did not have jurisdiction to consider Filoon's petition for review. Instead, Filoon was entitled to the procedural protections provided for in the demotion provisions of Section 1151, which he received in his hearing before the Executive Council and appeal to the Secretary of Education. Accordingly, the order of the Court of Common Pleas of Bucks County is vacated.

## ORDER

AND NOW, this 23rd day of November, 1993, the order of the Court of Common Pleas of Bucks County, dated February 4, 1993, is vacated.